## MARY BARRETT v. STEPHEN NEALON, ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

Argued February 23, 1888—Decided March 5, 1888.

A bond and mortgage, though in part securing an actual debt, but intended to cover the property of the obligor from the reach of certain persons only who held his indorsements, is fraudulent and void and assailable by all his creditors existing at the time of the transaction.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and
WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 39 January Term 1888, Sup. Ct.; court below, No. 14
April Term 1885, C. P.

The cause below was an action of ejectment brought on
June 15, 1885, by Mary Barrett against Stephen Nealon and
Michael Loftus, to recover a lot of land in Carbondale, known
as the Brewery lot.

At the trial on April 14, 1887, it was admitted that John
Nealon had title to the land in dispute on and prior to October
28, 1878.

The plaintiff showed title in herself by sheriff's deed to her
for all the right, title and interest of John Nealon in and to
the land described in the writ, dated April 10, 1884, acknowl-
edged same day and recorded. The sale by the sheriff had
been made on April 5, 1884, by virtue of a writ of fieri facias
issued upon a judgment at No. 417 October Term 1880, en-
tered on July 30, 1880, in favor of Thomas F. Walsh, upon a
note with warrant of attorney dated July 26, 1880, for $475.

The defendants claimed title by a sheriff's deed to them, for
all the right, title and interest of John Nealon in the land in
dispute, dated January 17, 1883, acknowledged January 18,
1883, and recorded. This sale by the sheriff had been made
on December 23, 1882, by virtue of a writ of fieri facias issued
upon a judgment at No. 486 January Term 1883, entered in
favor of Stephen Nealon and Michael Loftus upon a bond with
warrant of attorney given by John Nealon to Stephen Nealon
and Michael Loftus in $20,000, conditioned for the payment of
$10,000, dated October 29, 1878, and payable November 1, 1878.
Said bond was secured by two mortgages, one embracing all
the real estate of the mortgagor in Lackawanna county, and
the other all his real estate in Luzerne county.

As evidence affecting the title of the defendants upon the
ground of fraud in the confession of the judgment upon which
the sheriff's sale had been made to them, it was made to appear
that on October 29, 1878, the date of the bond and mortgages,
John Nealon was indebted between $11,000 and $13,000. For
between $6,000 to $7,000 of this indebtedness he was liable as
an indorser to L. G. Turner and Samuel Raynor. To Stephen

Nealon he owed $2,000, evidenced by a due bill dated July 3, 1877, and to Michael Loftus $1,000, evidenced by a due bill dated December 26, 1876. He was also indebted to Thomas F. Walsh, in $475 merged in the judgment upon which the sheriff's sale to the plaintiff was made, which indebtedness was for the wages of labor.

When the said bond and mortgages were executed to Stephen Nealon and Michael Loftus, John Nealon desired to obtain from them the further sum of $4,000, with which to improve his brewery and other property. Of this sum he afterwards received $3,500 from them. Other testimony was adduced by the plaintiff in substance as follows:

John Nealon testified that a few days before the bond and mortgages were given he talked upon the subject with Stephen Nealon, stating that he wanted protection from the two indorsements: "I had not any money from the parties and I didn't feel like paying it and I went and give him or give Loftus and Stephen Nealon a bond and mortgage for $10,000 to protect me from those creditors. He said he would go and get the mortgage, and had it written; he brought it to me in shape and I signed it. . . . . . There was a sale to come off; they were to protect me, by taking enough of the property, disposing of enough of it to pay themselves, and the balance convey it to some person, my friends or myself, for my benefit." On cross-examination by the defendants, the witness said the obligations were not given to defraud his "honest" creditors, and that Walsh was one of his "honest" creditors.

P. M. Moffitt testified, inter alia, as to a conversation with Michael Loftus about the time the bond and mortgages were given, in which Loftus related to witness the details of Nealon's indebtedness, and that when he gave them the bond and mortgages, Nealon said, "Now, Sam Raynor can go whistle for his."

Mr. John T. Lenahan, the attorney for John Nealon when the fieri facias was issued upon the judgment of Nealon and Loftus, was about to apply to the court to stay the writ on the ground that it was for more money than was justly due upon the judgment, when Loftus assured his client that they understood the agreement with John Nealon and would adhere to it.

There were other facts and circumstances put in evidence,

tending to show that the bond and mortgages executed by John Nealon to Stephen Nealon and Michael Loftus were given to hinder, delay and defraud the two creditors who held John Nealon's indorsements.

At the close of the testimony the plaintiff submitted twelve points for instructions, certain of which were as follows :

1. That if the jury find from the evidence that the two mortgages given by John Nealon to the defendants were for a larger amount than was due from him, and that they were given and received for the purpose of delaying or hindering the creditors of John Nealon, then no sale made of the property of Nealon upon any judgment on such mortgages or the bond accompanying them would give no title to the defendants which would be good against the creditors of John Nealon who were thus hindered or delayed.[3]

4. That if the jury find from the evidence that the mortgages were given and received partly to secure a just indebtedness then due and money to be advanced and partly to cover and protect the property of John Nealon from the claims of Samuel Raynor and Mr. Turner upon notes which Nealon had indorsed to the amount of about $6,000, then such mortgages become equally void as to any other creditor of said Nealon who might be hindered or delayed thereby.[3]

7. That it is a fraudulent act for a debtor to give to one creditor a mortgage largely in excess of his indebtedness, under any arrangement with such creditor that in the event of a sale the debtor is to be protected or in any way benefited thereby at the expense of his other creditors.[3]

8. That if the jury find from the evidence that the mortgages mentioned were given and received partly to cover the property of John Nealon and protect it from any claims of Mr. Raynor and Mr. Turner against him, and that Thomas F. Walsh was at the time a bona fide creditor of said Nealon, then Mr. Walsh or his assignee Mr. Tierney had a right to take advantage of this fraud and sell the property a second time on his judgment, and a sale on such judgment to Mrs. Barrett the plaintiff would give her a good title, as against the defendants, and she is entitled to recover.[3]

The defendants requested the court to charge that the verdict should be in favor of the defendants.[2]

Arguments.

The court, ARCHBALD, J., charged the jury as follows:

[I think I must take upon myself the responsibility of the case, and decide that there is not sufficient evidence to submit to the jury on the question of fraud. The mortgage itself is not fraudulent, and the only thing to make it so is the alleged corrupt agreement testified to by John Nealon as made with Stephen Nealon and that only discloses the purpose of defeating the indorsement.

I will affirm the defendants' point and refuse the plaintiff's points, which will take the case from the jury.] [1]

A verdict was then returned in favor of the defendants. Subsequently, the court discharged a rule for a new trial, holding inter alia:

The express statement of John Nealon, upon whose testimony the plaintiff necessarily depends, is that there was no intention of defrauding Thomas Walsh. The sole alleged fraudulent purpose was to defeat the indorsements held by Turner and Raynor. The plaintiff, claiming under Walsh, cannot avail herself of this. It is only as to the person intended to be defrauded that the statute of 13 Elizabeth operates. This is clearly pointed out by our Supreme Court in a number of recent cases: Monroe v. Smith, 79 Pa. 459; Harlan v. Maglaughlin, 90 Pa. 293; Kimble v. Smith, 95 Pa. 69; Haak's Appeal, 100 Pa. 61; Armington v. Rau, 100 Pa. 165; Bonesteel v. Sullivan, 104 Pa. 9; Zuver v. Clark, 104 Pa. 222. It is confederated fraud which avoids the conveyance or security given, and as to all parties other than the creditor intended to be defrauded it stands good. . . . .

Judgment having been entered upon the verdict, the plaintiff took this writ, assigning for error:

1. The charge of the court embraced in [ ] [1]
2. The affirmance of defendants' point.[2]
3. The refusal of the plaintiff's points.[3]

*Mr. Lemuel Amerman* and *Mr. W. H. Jessup,* for the plaintiff in error:

1. The court below should have submitted the case to the jury, because: (1) In the testimony of John Nealon, the debtor, of John T. Lenahan, his attorney, of P. M. Moffitt,

and in the admission of Michael Loftus, there was direct evidence of fraud. (2) The quantum of evidence to prove a fraud is no greater than to prove any other fact: Kaine v. Weigly, 22 Pa. 179, 183; Young v. Edwards, 72 Pa. 257. (3) When there is evidence on the part of the plaintiff of the disputed fact, or evidence from which it may be inferred, it should be submitted to the jury: Howard Exp. Co. v. Wile, 64 Pa. 205; Abraham v. Mitchell, 112 Pa. 230; N. Bank DuBois City v. First N. B. Williamsport, 114 Pa. 1. (4) In giving binding instructions for the defendants, the court was obliged to pass upon the credibility of witnesses, the conflict of testimony and the preponderance of evidence, which matters were for the jury alone: Codding v. Wood, 112 Pa. 371; Abraham v. Mitchell, 112 Pa. 232. (5) In such case, as in a compulsory nonsuit, all facts proven by the plaintiff showing fraud, or from which fraud may be inferred, are to be taken as true: Mayne v. Atwater, 88 Pa. 497; Miller v. Bealer, 100 Pa. 583; McGrann v. Railroad Co., 111 Pa. 171.

2. And the court should have affirmed the plaintiff's points. (1) A bond and mortgage given for a larger amount than was due, or intended to become due, is evidence of fraud: Jackson v. Summerville, 13 Pa. 359. (2) All existing creditors, hindered and delayed, may set up such fraud: Byrod's App., 31 Pa. 241. (3) Any agreement or transaction between a creditor and debtor which has a direct tendency to protect the property of the debtor from his creditors, and, in the event of a sale, to secure to him a benefit at the expense of his creditors, is fraudulent and void as to all such creditors: Passmore v. Eldridge, 12 S. & R. 198; McCulloch v. Hutchinson, 7 W. 434; McClurg v. Lechy, 3 P. & W. 83. (4) A bond and mortgage, given partly to secure a real debt and partly to hinder and delay creditors, is void as to the whole: Gates v. Johnston, 3 Pa. 52; Whiting v. Johnson, 11 S. & R. 328; McKee v. Gilchrist, 3 W. 230; Jackson v. Summerville, 13 Pa. 359; Bunn v. Ahl, 29 Pa. 387.

*Mr. E. N. Willard*, of *Willard & Warren*, and *Mr. F. W. Gunster*, of *Gunster & Wells*, for the defendants in error:

In this case the facts are not in dispute. John Nealon, the plaintiff's only witness on the subject, swears positively and

reiterates that "there was no intention to delay, hinder or defraud Thomas F. Walsh." The law applicable to the case was fairly construed by the learned judge in the court below, in his opinion refusing a new trial.

OPINION, MR. JUSTICE PAXSON:

The learned judge below unfortunately drifted into a wrong theory in the trial of this case, and the error runs all through it. He held substantially that if the mortgage given by John Nealon to the defendants below, was in pursuance of an arrangement by which it was to be used to protect Nealon's property from the creditors who held his indorsements, it was not fraudulent unless he also intended to hinder and delay the plaintiff below. Nealon testified that the mortgage was intended in part at least to cover up his property so that it could not be made liable for his indorsements; that he did not regard them as just debts, and that he had no thought or intention of keeping any of his just creditors at bay, and particularly that he did not intend to defraud the plaintiff below.

It needs but a moment's reflection to see that this position cannot be sustained. The plaintiff was a creditor at the time the mortgage was given. Nealon was as much bound for his indorsements as for any other debt. The effect of covering up his property to protect him against particular creditors is a wrong against them all, and they are all equally hindered or delayed. He cannot be permitted to say that he intended to cheat A. but did not mean to cheat B., both being existing creditors at the time; and that his mortgage or conveyance given for the purpose of covering up his property, while void as to A., is yet good against B., because he did not intend to defraud the latter. It is true we have held in some cases that where a debt has been contracted years after the fraudulent act, such creditor has no standing to attack it, for the reason that not being a creditor at the time he was not a creditor intended to be defrauded. But it has never been held that a conveyance to hinder and delay creditors was not assailable by all creditors existing at the time of the conveyance.

Acting upon the theory above indicated, the learned judge held that there was not sufficient evidence of fraud to submit to the jury, and directed a verdict for the defendants. This,

we think, was error.   There was the positive evidence of Nealon that the mortgage was given to protect his property from his indorsees, and there was some evidence that the defendants (mortgagees) knew of his purpose, and acquiesced in it. There was enough to carry the case to the jury.   All of the assignments of error are sustained.

> Judgment reversed, and a venire facias de novo awarded.