LYDIA A. CLARK, RESPONDENT, v. MARIA MacDONALD AND OTHERS, APPELLANTS. [No. 1.]

LYDIA A. CLARK, RESPONDENT, v. MARIA MacDONALD AND OTHERS, APPELLANTS. [No. 2.]

*Fraudulent conveyances — liability of a retiring partner of a firm — proof of an intent to defraud a particular person is not necessary.*

One Maria MacDonald was a partner in the firm of Shuler & Co., in which one Clark and one Shuler were also partners. MacDonald and Shuler bought out Clark and gave notes to his wife for his interest in the partnership business. Subsequently MacDonald sold her interest to the remaining partner, Shuler, who agreed to pay the firm debts. The trial court refused to find that at this time the firm was solvent. Thereafter MacDonald made transfers of property, without consideration, to her daughter.

In actions brought by Clark, as a judgment-creditor of the firm composed of MacDonald and Shuler, to set aside such transfers as fraudulent:

*Held,* that the actions could be maintained:

That the liability of MacDonald to pay the firm debts continued, and that the transactions between her and Shuler did not affect the plaintiff.

That the fact that MacDonald might have supposed that Shuler would pay the plaintiff, and hence in making said transfers did not intend to defraud the plaintiff, was of no importance if the effect of the transfers was to hinder, delay or defraud the plaintiff.

That the assignment was void as against persons hindered, delayed or defrauded thereby, even though the assignor had not those particular persons in mind when the assignment was made.

That the fact that Shuler had agreed to pay the firm debts was only a circumstance bearing upon the question whether MacDonald, in making her transfers to her daughter, had a fraudulent intent.

APPEAL in the first above-entitled action by the defendants, Maria MacDonald, Carrie S. MacDonald, Lillie S. Stevenson, Isaac C. Shuler, Thomas Morphy and Henry Michaelson, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Montgomery on the 5th day of February, 1891, setting aside certain transfers by the defendant Maria MacDonald to the defendant Carrie S. MacDonald, and by her to the defendant Lillie S. Stevenson, with notice of an intention to bring up for review, upon such appeal, all of said judgment, except that portion dismissing the complaint, so far as it related to certain Main street property, after a trial before a referee; also an appeal in the second above-

entitled action by the defendants, Maria MacDonald, Carrie S. MacDonald, Lillie S. Stevenson and Thomas Morphy, from a judgment, entered in said clerk's office on said last-mentioned day, setting aside certain transfers by the defendant Maria MacDonald to the defendant Carrie S. MacDonald, and by the latter to the defendant Lillie S. Stevenson, after a trial before a referee, with notice of an intention to bring up for review, upon such appeal, all of said judgment, except that portion dismissing the complaint, so far as it related to certain Main street property.

*W. G. Maxwell* and *John L. Henning*, for the appellants.

*C. S. Nisbet* and *W. L. Van Denbergh*, for the respondent.

LEARNED, P. J.:

These are appeals by defendants from judgments on the report of a referee. The actions arise out of the transactions which were the subject of controversy in *MacDonald* v. *MacDonald* (33 N. Y. St. Rep., 39). And these actions, like that, were brought by a judgment-creditor to set aside conveyances alleged to be fraudulent.

The plaintiff sought to recover the Main street property, as to which the referee reported in favor of defendant; the Spring street property; the annuity contract and the bank stock, as to all of which the referee reported in plaintiff's favor. The conveyances were made by Maria MacDonald, the judgment-debtor, to her daughter, Carrie S. MacDonald. Carrie S. MacDonald made certain conveyance of this property to one Lillie S. Stevenson. But there is no attempt on this appeal to claim that Lillie S. Stevenson acquired any better title than Carrie S. MacDonald had. We need only refer to what was said by this court in the former case as to the attempted conveyances by Carrie S. to Lillie S. Stevenson. The testimony given by Lillie S. Stevenson in the former case was read in this. The referee came to the same conclusion in regard to her pretended title with that of Mr. Justice FISH in the former case. And his conclusion is unquestionably correct. The only question of importance, then, is whether these transfers and conveyances to Carrie S. were valid against the plaintiff.

In 1871 the firm of I. C. Shuler & Co. was composed of Isaac C. Shuler, Maria MacDonald and Augustus Clark. It so continued till

1883, when Clark's interest in the business, being three-tenths, was bought by Maria MacDonald and Shuler, and they gave thereupon a note of $5,000 to the plaintiff, Clark's wife, on which note the judgment in the first suit was recovered. The judgment in the second suit was also on notes amounting to $1,075 made by said Maria MacDonald and said Shuler.

In 1888 Maria McDonald sold out to Shuler. He agreed to pay her an annuity of $800 a year for three years (which is the annuity contract), and Shuler agreed to pay all the partnership debts. The referee refused to find that the firm was then solvent, and that Shuler had considerable property outside of the firm.

The three notes above mentioned are stated in the referee's opinion to be firm notes of I. C. Shuler & Co.

The counsel for the appellants seeks to distinguish these cases from that above referred to on the ground that these were firm debts; that Maria MacDonald had reasonably provided for their payment by her transfer of her interest in the firm to Shuler, and by his agreement to pay these debts; that she had thus become a *quasi* surety, and Shuler the principal debtor; and that, under these circumstances, the voluntary transfer of her property to her daughter should not be held fraudulent.

Of course, unless the firm was, in fact, solvent, or Shuler had property outside, there was nothing in the agreement which gave plaintiff any protection. And, in any event, plaintiff acquired no additional security. When Maria MacDonald went out of the firm, Shuler and the firm property were already liable; and his agreement to pay the firm debts was only a matter between himself and the outgoing partner. Even if Shuler had, at that time, property outside of the firm, that property was already liable for his debts. So that in no way did Maria MacDonald, when she went out of the firm, increase the plaintiff's security. It is further evident that the prosperity of the firm had fallen off largely before this time.

It is well settled under our statute that, in such cases, the question of fraudulent intent is generally one of fact. The referee finds, as fact in this case, that the several transfers were made with intent to hinder, delay and defraud plaintiff, and were accepted by Carrie S. with the distinct understanding that she was to hold and manage the same for said Maria MacDonald.

And we see no reason to doubt the correctness of this conclusion. The transfers were without consideration, and they transferred all the property of Maria MacDonald. Carrie S. herself says she took this property to manage it for her mother, and is managing it for her. This is plainly not the case of a gift to a child, reasonable in amount, compared with the property of the parent.

The appellants claim that, even if Maria MacDonald transferred this property to Carrie S. with intent to defraud some creditors, yet the transfers were not void as to the plaintiff, because she was (as they claim) secured by Shuler's agreement to pay them. We have already seen that she was not, in fact, secured by this agreement, and that it was of no benefit to her. But, in any event, the statute does not say that an assignment, made with intent to defraud creditors, shall be void as to those whom the assignor intended to defraud, or as to those who have no security whatever. That would be a very lame statute. The statute is that the assignment is void " as against the persons so hindered, delayed or defrauded." (2 R. S., m. p. 137, § 1.) If one makes an assignment with intent to defraud creditors, it is void as to a defrauded creditor, although he was not in the mind of the assignor. The creditor thus actually defrauded by the act of the debtor is not to be deprived of his rights to reach what is truly the debtor's property by an assertion on the part of the debtor that he supposed that *that* creditor could collect his debt in some other way, and that he was only endeavoring to defraud some other creditors. The appellants in this case say: True, these transfers were made with intent to defraud creditors; but Maria MacDonald was not thinking of this plaintiff, and, indeed, supposed that Shuler would pay her; therefore, although the plaintiff is actually defrauded and unable to collect her debt, yet the fraudulent assignee shall keep the property from this insolvent debtor.

An assignment with intent to defraud creditors cannot stand as against any creditor who is thereby defrauded; whether the intent was specially to defraud him or not, and whether or not he may have a right to sue some other person for the debt. For the thing assigned in such a case is not rightfully the property of the assignee, but, as against creditors of the assignor, is still the property of the assignor.

Of course, the fact that Shuler had agreed to pay these debts was a circumstance, with all the other circumstances, to be considered

on the question whether the transfers to Carrie S. were made with intent to defraud creditors. But on this question of fact, on the intent of Maria MacDonald and Carrie S., we think the referee found correctly. He could hardly have found otherwise.

The appellants urge that as the plaintiff did not succeed in respect to the Main street property, the referee should not have allowed costs against them in each action. No appeal is taken by the plaintiff in respect to the judgment as to this Main street property. Yet there are circumstances which cast suspicion on the conveyance of that property. It was without consideration. The deed was not recorded for four years. Taxes, etc., were paid out of Maria's money. Fortunately for the defendants the referee decided that the conveyance was not with intent to defraud creditors. But we think that the defendants' success in that respect does not make their position so meritorious that they should escape paying costs.

Judgment affirmed in both cases, with costs against defendants personally.

LANDON and MAYHAM, JJ., concurred.

Judgments affirmed, with costs.