NATHANIEL J. SCOTT, Appellee, *vs.* JOSEPH D. LUMAGHI, Appellant.

*Opinion filed October 26, 1908—Rehearing denied Dec. 4, 1908.*

1. FRAUD—*what tends to show fraud in procuring assignment of judgment.* Proof that after the recovery of a large judgment against a corporation and pending a motion for new trial all movable assets of the corporation were sent out of the State to one of its directors and officers, who owned one-fourth of the capital stock; that such director sold $5000 worth of .stock for $5 and resigned as a director, after which the judgment was assigned to him and the assets of the corporation transferred to him, tends to show that such assignment and transfer were fraudulent as to other creditors of the corporation.

2. SAME—*what is not necessary in order to impeach transaction for fraud.* In order to impeach a transaction as being fraudulent as against the rights of creditors it is not necessary that the evidence should show a specific intent to defraud the particular creditor attacking the transaction, and any evidence tending to prove the transaction to be fraudulent as to one creditor is equally available to any other existing creditor who attacks the validity of such transaction. ·

FARMER and HAND, JJ., dissenting.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

B. H. CANBY, and ALEX. W. HOPE, for appellant.

A. D. GASH, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an action of assumpsit brought by the appellee, Nathaniel J. Scott, against the Great Western Coal and Coke Company for commissions claimed by Scott for the purchase of coal from the St. Louis and Big Muddy Coal Company. Scott sued out an attachment in aid of his suit,

and caused certain corporations, firms and individuals to be summoned as garnishees which he claimed were indebted to the Great Western Coal and Coke Company. The defendant below pleaded the general issue, and upon a trial a judgment was rendered in favor of the plaintiff, against the Great Western Coal and Coke Company, for $1229.54. From this judgment the Great Western Coal and Coke Company has not appealed and that judgment is in no way involved at this time. Joseph D. Lumaghi filed an interplea, in which he claimed that he was the owner of all the property, of every kind and character, including book accounts and all other bills receivable, that had formerly belonged to the Great Western Coal and Coke Company. In his interplea Lumaghi set up in detail the manner in which his claim to the assets of the corporation originated. The plaintiff below, Scott, filed a replication to the interplea, in which he denied that Lumaghi was the owner of the property attached and debts garnisheed, and charged that if any assignment or transfer of the assets of the Great Western Coal and Coke Company had been made, the same was made in fraud of the rights of the plaintiff below and other creditors of the Great Western Coal and Coke Company. The issue thus made up on the interplea was tried by jury in the superior court of Cook county, which court, after overruling a motion for a new trial, pronounced judgment upon a verdict found against the interpleader. Lumaghi appealed to the Appellate Court for the First District, where the judgment of the superior court was affirmed, and he has prosecuted a further appeal to this court.

At the close of the evidence in the trial court appellant requested the court to direct a verdict in his favor. The ruling of the court in refusing to direct such verdict is the only error assigned which is open for consideration in this court. We will examine the evidence briefly to ascertain whether there is any evidence fairly tending to support the verdict of the jury.

The Great Western Coal and Coke Company had a capital stock of $20,000. Appellant was a director in the company and its treasurer, and owned one-fourth of its capital stock. His brother, Louis F. Lumaghi, also owned $5000 of the capital stock and was a director. On March 25, 1905, Adolph Enders obtained a judgment against the Great Western Coal and Coke Company, in the superior court of Cook county, for $12,850. The Great Western had its principal office in Chicago. After the Enders judgment was obtained and while the motion for a new trial was pending, and within a few days after the verdict of the jury was rendered in the Enders case, the directors of the Great Western closed up the office of the company in Chicago and shipped all of its books of account and tangible assets to St. Louis, Missouri, and located them in a building in which appellant and his brother have offices. Appellant made a pretended sale of his $5000 in stock for five dollars, and his brother, Louis, sold his stock for one dollar, and they both resigned as directors, or attempted to do so. Subsequently Enders filed a creditor's bill against the Great Western and others, including appellant. A receiver was appointed by the court under the creditor's bill and an order was made requiring the assets of the coal company to be returned to Chicago. Appellant took an assignment of the Enders judgment, and also received a transfer of all the property, of every kind and character, of the Great Western Coal and Coke Company. The Enders judgment was assigned first to Moses, an attorney who had been connected with the litigation, and he assigned the judgment to appellant. Moses testifies that he received $9300 of the money which he paid Enders from appellant, and $4000 he received from the Great Western Coal and Coke Company, through A. W. Underwood, an attorney.

Appellant contends that having succeeded to the Enders judgment by assignment, he is entitled to all the rights, remedies and priorities that existed in favor of Enders, and

that his right to receive the assets of the company in pay-
ment of this judgment cannot be questioned by other cred-
itors of the Great Western Coal and Coke Company. Un-
doubtedly this contention would have much force in it if
the transaction was *bona fide* and free from any purpose
to hinder and delay other creditors of the Great Western
Coal and Coke Company. The question is not so much the
form which the transaction assumes as it is the intent and
purpose that actuated the parties to an alleged fraudulent
contract. The circumstance that all of the visible assets
of the corporation were sent to a foreign State to appel-
lant before he had either procured the assignment of the
judgment or a transfer of the assets is a badge of fraud.
No reasonable explanation is attempted why the Great
Western Coal and Coke Company, an Illinois corporation,
sent all of its books and property, of every kind that was
movable, out of the State while a motion for a new trial
was pending against it in a case wherein a large verdict had
been rendered. The further fact that appellant disposed of
$5000 of stock for five dollars and resigned his position as
director of the corporation before he took the assignment
of this judgment and received a transfer of the property of
the Great Western, would indicate that he was seeking to
dissolve his fiduciary relation to the company so that the
contemplated assignment and transfer might have a more
secure basis.

If the transaction by which appellant succeeded to the
assignment of the Enders judgment and the assets of the
Great Western Coal and Coke Company was in good faith,
why should the transfer have been made first to Moses,
the attorney, and then by Moses to appellant? Appellant
claims to have furnished all of the money except $4000
used by Moses in paying Enders for the assignment of the
judgment. Under these circumstances, the usual and ordi-
nary course would have been to have the assignment made
direct to appellant. Moses was merely an agent of appel-

lant and the Great Western Coal Company in taking this assignment. He had no beneficial interest in the judgment or the assets of the corporation, and the fact that the property passed through his hands to appellant does not present any different legal aspects than if the transfer had been made direct to appellant in the first instance.

Without rehearsing at length the cross-examination of appellant as the same appears in the additional abstract, it is sufficient to say that the explanation made by him of his connection with this transaction in some respects, and his failure to explain other important facts when he had an opportunity to do so in answer to pertinent questions put to him, tend rather to weaken the claim set up by appellant that he was a purchaser in good faith of the assets of this corporation. It is not controverted that $4000 of the money that was paid to Enders by Moses was the money of the Great Western Coal and Coke Company. If we may assume that the tangible assets of the company in the hands of the receiver were worth no more than the face of the Enders judgment, and the corporation furnished $4000 of the money which was paid on that judgment to secure the release of the assets and the discharge of the receiver, it follows that at least to the extent of $4000 the assets in the hands of appellant would be subject to the claims of other creditors.

It is not necessary, in order to impeach a transaction as being fraudulent against the rights of creditors, that the evidence should show a specific intent to defraud the particular creditor who may attack the transaction. In the case before us it may be conceded that the evidentiary facts which tend to prove a fraudulent intent have reference to the Enders judgment. Yet if a fraudulent scheme was conceived for the purpose of defrauding Enders out of his judgment, evidence proving such purpose would be equally available to any other existing creditor who might attack the validity of such transaction.

In our opinion there is evidence strongly tending to prove that appellant was not a purchaser in good faith of the assets of the Great Western Coal and Coke Company, and that for this reason the trial court did not err in submitting the case to the jury.

Errors are assigned upon the giving and refusal of instructions and upon the rulings of the court in the admission and exclusion of testimony, but none of these assignments are urged in appellant's brief and must therefore be considered as being waived.

Finding no error in the record the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*

FARMER and HAND, JJ., dissenting:

We do not concur in the opinion of the court. The Enders judgment was a valid judgment. It was assigned to Moses, and that was a *bona fide* transaction. The property of the Great Western Coal and Coke Company was thereafter assigned by it to Moses to apply on the judgment, and this transaction was approved and confirmed by order of the court in which the receivership proceedings were pending and the receiver directed to deliver the property to Moses. Afterwards appellant paid Moses some $9000, or a little more, for the property, and it was transferred by Moses to him. At that time appellee had no interest in or lien upon the property. The record does not show that the property was worth any more than appellant paid for it, and is barren of any evidence tending to impeach the good faith of the transaction. In our opinion the judgment should have been reversed.