[Civil No. 2039.   Filed January 17, 1924.]

[222 Pac. 407.]

ARIZONA STATE BANK, a Corporation, and A. T. LA PRADE, Plaintiffs, v. CRYSTAL ICE & COLD STORAGE COMPANY, a Corporation, WILLIAM G. LENTZ and F. T. LA PRADE, Defendants. WILLIAM G. LENTZ, Cross-Plaintiff and Appellant, v. F. T. LA PRADE and A. T. LA PRADE, Cross-Defendants and Appellees.

1. JURY—TRIAL—VERDICT OF JURY IN ACTIONS INVOLVING EQUITABLE RELIEF MANDATORY. — Under Civ. Code 1913, paragraph 542, which was in effect in 1921, all controverted issues of fact in actions involving equitable relief, on demand of either party, must be submitted to the jury, and the verdict of the jury is mandatory.

2. FRAUDULENT CONVEYANCES — INTENT TO DEFRAUD ANY CREDITOR MAKES TRANSFER VOID AS TO ALL CREDITORS. — Under Civ. Code 1913, paragraph 3273, making invalid transfers of property intended to hinder, delay, or defraud creditors, an intent to hin-

---

2.  See 12 R. C. L. 531.

der or defraud any creditor makes the transfer void as to all creditors actually injured thereby.

3. FRAUDULENT CONVEYANCES — WHERE FRAUDULENT INTENT IS REFERABLE TO PARTICULAR CREDITOR, IT IS NOT NECESSARY TO PROVE CLAIM LEGALLY ENFORCEABLE.—Under Civ. Code 1913, paragraph 3273, making invalid transfers of property intended to hinder, delay, or defraud creditors, if the intent is referable to a particular presumptive creditor, it is not necessary to prove, nor even to make out a *prima facie* showing, that such creditor's claim is legally enforceable.

4. FRAUDULENT CONVEYANCES — WHERE TRANSFER WAS TO PREVENT ENFORCEMENT OF CONTRACT MORALLY UNJUST, VERDICT FOR CREDITOR SHOULD HAVE BEEN DIRECTED.—Where debtor and his son both testified that property was transferred to the son to prevent enforcement of a contract which debtor believed to be morally unjust, neither could be heard to assert that it was not a claim of a "creditor or other person," within Civ. Code 1913, paragraph 3273, and a verdict should have been directed for a creditor who sought to have conveyance set aside.

5. FRAUDULENT CONVEYANCES — REFUSAL TO SUBMIT CONTROVERTED QUESTION TO JURY HELD ERROR.—If there is a controverted issue of fact in an action to set aside a transfer of property as a fraud against creditors as to whether debtor intended to delay, hinder or defraud a particular creditor at the time of the transfer, it was error to refuse to submit it to the jury.

6. APPEAL AND ERROR—ON REVERSING JUDGMENT, SUPREME COURT MAY RENDER JUDGMENT OR REVERSE WITH DIRECTIONS. — Under Civ. Code 1913, paragraph 1268, the Supreme Court, on reversing a judgment, may either render such judgment as the court below should have rendered or reverse with directions to take such proceedings as justice may require.

7. APPEAL AND ERROR—WHEN VERDICT SHOULD HAVE BEEN DIRECTED, SUPREME COURT RENDERED JUDGMENT.—Under Laws 1921, chapter 125, where the trial court should have directed verdict for plaintiff, because of defendant's admissions at the trial, a verdict by the jury would be merely advisory, and a judgment was therefore rendered on such issue by the Supreme Court.

APPEAL from a judgment of the Superior Court of the County of Maricopa.   W. A. O'Connor, Judge. Reversed and remanded with instructions.

4.  See 26 R. C. L. 1067.

5.  See 26 R. C. L. 1068; 2 R. C. L. 198.

6.  See 2 R. C. L. 266.

See 4 C. J. 1185, 1191, 1193; 21 C. J. 597; 27 C. J. 506, 837; 24 Cyc. 111; 38 Cyc. 1936, 1937.

Mr. Thos. P. Walton and Mr. Herbert B. Shoemaker, and Mr. Robert McMurchie and Messrs. Norris and Norris, for Cross-Plaintiff and Appellant.

Messrs. Kibbey, Bennett, Gust & Smith, and Mr. F. J. Duffy, for Cross-Defendants and Appellees.

LOCKWOOD, Superior Judge.—This action was originally brought by the Arizona State Bank and A. T. La Prade against the Crystal Ice & Cold Storage Company to compel the latter company to pay over to plaintiffs the amount of the accumulated dividends on certain shares of its stock owned by A. T. La Prade and in the possession of the bank as collateral security for a loan. Some time previously cross-plaintiff Lentz had brought suit against F. T. La Prade on a certain promissory note for $15,000, and an attachment had been issued December 9, 1918, against the property of La Prade, a part of such property being his interest in 229 shares of the capital stock of the Crystal Ice & Cold Storage Company, which was the same stock held by the Arizona State Bank as security, aforesaid. The ice company paid the dividends into court and interpleaded Lentz as defendant, and in 1920, by stipulation, the entire dividends accumulated on the stock were paid over to A. T. La Prade to be used in the payment of certain debts of the estate attached, among them being the debt of the Arizona State Bank, whose claim was then fully satisfied. Meanwhile, Lentz, having been made a defendant, brought in F. T. La Prade as a defendant, and then filed a cross-complaint against defendant F. T. La Prade and A. T. La Prade as cross-defendants. The action was then tried as the action of William G. Lentz, cross-plaintiff, against F. T. La Prade and A. T. La Prade, cross-defendants, on the cross-complaint and the amended answer thereto. Hereinafter Lentz will be referred to as plaintiff and the La Prades as defendants.

The cross-complaint alleges that the transfers from F. T. La Prade, under which A. T. La Prade claims title to the various properties set forth therein, were made to hinder, delay, and defraud the creditors of F. T. La Prade, and that they should be set aside, and the property subjected to the attachment of plaintiff. The defendants set up a general denial.

The action was tried before the court sitting with a jury and various interrogatories and a general verdict were returned in favor of the defendants, on which judgment was duly rendered, and from this judgment, and the order denying a new trial, plaintiff Lentz appeals.

Under the pleadings this action was evidently based on the provisions of paragraph 3273 and paragraph 3274, R. S. A. 1913 (Civ. Code), which reads as follows:

"3273. Every gift, conveyance, assignment or transfer of, or charge upon any estate, real or personal, any suit commenced, or decree, judgment or execution suffered or obtained, and any bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchaser or other persons, their representatives or assigns, be void. This chapter shall not affect the title of a purchaser for a valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.

"3274. Every gift, conveyance, assignment, transfer or charge made by a debtor which is not upon consideration deemed valuable in law shall be void as to prior creditors, unless it appear that such debtor was then possessed of property within this state, subject to execution, sufficient to pay his existing debts; but such gift, conveyance, assignment, transfer or charge shall not on that account merely be void as to subsequent creditors, and though it be decreed to be void as to a prior creditor, because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers."

Plaintiff sets up that F. T. La Prade conveyed the property in question to A. T. La Prade, his son, with intent to delay, hinder, and defraud creditors, or at least some of them, including plaintiff, and that A. T. La Prade had knowledge of such intent at the time, thus claiming that the conveyance fell under the ban of paragraph 3273. He also claims that the transfer was not on a consideration deemed valuable in law, and that as it left F. T. La Prade without sufficient property to pay his debts it was void under paragraph 3274.

Defendants set up only a general denial in their pleadings, but on the trial they strenuously contended there was no intent to defraud any creditor, and particularly none as to plaintiff, at the time of the transfers, and further that there was a full and adequate consideration therefor.

In order that we may intelligently consider the various assignments of error, it is best that we first determine the theory of law on which the case was tried below, and then decide if such theory was the proper one.

The case was tried on April 12 to April 21, 1921. At this time, the law governing trial before a jury in equity cases was found in paragraph 542, R. S. A. 1913 (Civ. Code), which reads as follows:

"542. In all actions where equitable relief is sought the court shall, if a jury be demanded by either party, submit to the jury all controverted questions of fact. Interrogatories shall be framed and approved by the court presenting such questions, and each interrogatory shall be confined to a single question of fact and shall be so framed as to be answered by yes or no, and shall be so answered where yes or no is possible. In every such case the verdict shall be binding upon the court in the determination of the action, unless set aside and a new trial granted on motion made for that purpose."

This has been construed by our Supreme Court to mean *all* controverted issues of fact *must* be sub-

mitted to the jury, if they are material to a proper determination of the case, and of course the verdict of the jury was then mandatory. *Corbett* v. *Kingan,* 16 Ariz. 440, 146 Pac. 922; *Smith* v. *Mosbarger,* 18 Ariz. 19, 156 Pac. 79.

The learned trial judge refused to submit plaintiff's interrogatories IV, V, VI, XIII, XIV and XV to the jury. These all dealt with the intent of defendants as to the transfers in regard to a certain transaction between F. T. La Prade and the Bankers' Bond & Mortgage Company, of Los Angeles. The evidence shows conclusively that F. T. La Prade had entered into an agreement with the last-named company, which, on its face, made him its debtor, and that he, believing the agreement to be morally not binding, but possibly legally enforceable, put the property in his son's name, as he says, "solely for the purpose of putting that property out of the reach of those Los Angeles people," and that his son was fully aware of all the facts. Such refusal could be based only on one of two theories: First, that under paragraph 3273 the intent must be to delay, hinder, or defraud the particular creditor who brought the action; or, second, that if the intent was as to some other presumptive creditor, the plaintiff must first prove affirmatively that such person's claim was a legally enforceable one. We must, therefore, determine the proper construction of paragraph 3273.

Dealing with the first theory, it amounts to saying that if I owe ten creditors, and transfer my property with the admitted deliberate intent to delay, hinder or defraud nine of them, I may defend against a suit by the tenth on the ground that, although my action does in fact delay or hinder him, yet since he was not specifically in my mind at the time of the transfer, his action falls. Such a theory is certainly not good morals nor equitable, nor, under the decisions, is it good law. An intent to hinder, delay or defraud *any*

creditor makes the transfer void as to *all* who are actually injured thereby. *Allen* v. *Rundle,* 50 Conn. 9, 47 Am. Rep. 599; *Scott* v. *Lumaghi,* 236 Ill. 564, 86 N. E. 384; *Personette* v. *Cronkhite,* 140 Ind. 586, 40 N. E. 59; *Washburn* v. *Hammond,* 151 Mass. 132, 24 N. E. 33; *Clark* v. *MacDonald,* 62 Hun, 149, 16 N. Y. Supp. 493; *Barrett* v. *Nealon,* 119 Pa. 171, 4 Am. St. Rep. 628, 12 Atl. 861; *Spuck* v. *Logan & Uhl,* 97 Md. 152, 99 Am. St. Rep. 427, 54 Atl. 989.

The second possible theory is that plaintiff in this case must first have presented sufficient proof of the legality of the claim of the Bankers' Bond & Mortgage Company to justify a judgment in its favor, or at least must make a *prima facie* showing that it was a *bona fide* creditor. But such a position is contrary to the general policy of the law in regard to fraudulent conveyances. Creditors are a favored class, and the preservation of their rights is a fundamental policy of all enlightened nations. Only Russia among modern countries claims the contrary. *Gable* v. *Columbus Cigar Co.,* 140 Ind. 563, 38 N. E. 474; Waite, Fraud. Conv., par. 1; Story, Eq. Jur., par. 350.

From the time of Magna Charta itself down through the statutes of Richard II, Edward III and Henry VII, to the famous law of 13 Elizabeth, the same principle has held good, and in Twyne's Case, 3 Coke, 80a, 76 Eng. Reprint, 809, decided over 300 years ago, and followed by practically every English-speaking court since that day, it was said:

"Because fraud and deceit abound in these days more than in former times it was resolved by the whole court, that all statutes made against fraud should be liberally and beneficially expounded to suppress fraud."

In the case at bar particularly, the rule adopted by the trial court would be harsh and inequitable.

F. T. La Prade testified on the subject as follows:

"My son at that time knew all about the Los Angeles transaction. I told him everything I knew about the Los Angeles transaction, and he and I discussed very fully the danger there was to my property if I kept it in my own name, and it was solely for the purpose of putting that property out of the reach of those Los Angeles people that I and my son had this deed made."

While his son said:

"On the 19th day of May I knew of the gas plant deal; I knew it on the day I got home. I was contemplating him being sued on that occasion and I was going to protect my rights the best way I could."

And the record is full of undisputed evidence that F. T. La Prade was endeavoring to evade the performance of a contract which he admits he entered into, involving a possible liability on his part of many thousand dollars.

It is true that both the La Prades undoubtedly believed this claim of the Bankers' Bond & Mortgage Company to be morally unjust, and that it was based upon misrepresentations made to F. T. La Prade, nor can we say from the record that there might not have been some justification for such belief; but it cannot be permitted that debtors, no matter how honestly, may determine for themselves the legality of a possible indebtedness, and particularly it cannot be allowed that even upon such a belief, they may resort to a prohibited means to hinder, delay or defraud the alleged creditor from enforcing any right he may establish according to the rules of law. The defendants testified they were both fully aware of the existence of the claim of the Bankers' Bond & Mortgage Company; that they believed that there was at least a possibility that it might be legally enforceable; and that the transfers were made to prevent such enforcement. They cannot now be heard to assert that it was not a claim of "a creditor or other person," within the provisions of paragraph 3273. *Spuck* v. *Logan & Uhl, supra.*

We therefore must conclude that if there was a *controverted* issue of fact as to whether F. T. La Prade, with the knowledge of his son, intended to delay, hinder or defraud the Bankers' Bond & Mortgage Company at the time of the transfers, it was obviously error going to the very foundation of the action to refuse to submit it to the jury. If, on the other hand, defendants are bound by their admissions in open court, under oath, then there was no issue of fact on that point, and a verdict in favor of plaintiff should have been directed.

Since the case must in any event be reversed for the reasons given, it is not necessary to discuss the other assignments of error, covering admission of improper testimony and the question of consideration. The only remaining matter for decision is as to what form the order of reversal should take.

Under the provisions of paragraph 1268, R. S. A. 1913 (Civ. Code), this court may either on reversal render such judgment as the court below should have rendered, or remand the cause to the court below with directions to take such proceedings as justice may require. Defendants by their own solemn admissions under oath made repeatedly during the trial, have bound themselves as to the existence of such a state of facts as would compel any fair-minded court to find that the transfers in question were made in contravention of the terms of paragraph 3273, R. S. A. 1913 (Civ. Code), and under the present law a jury verdict would be merely advisory. Chapter 125, Session Laws 1921. To order a new trial on that issue would be a useless waste of time and money. Further, defendant F. T. La Prade, from the record, has no defenses which he can urge against plaintiff. But this is not necessarily true as to A. T. La Prade. His claim to the property in question as the transferee of his father must be denied, and the conveyances attacked set aside. However, his rights as the heir of his deceased mother have not been, and cannot be, de-

termined by this court on the record before it. If he has any rights as such, he is entitled to assert them as against the attachments of plaintiff.

The case is reversed and remanded to the superior court of Maricopa county with instructions to enter judgment against defendants F. T. La Prade and A. T. La Prade that all conveyances and transfers of the property described in the pleadings from F. T. La Prade to A. T. La Prade, and covered by the attachments of plaintiff, William G. Lentz, be and the same are declared to be null and void, and of no effect as to the said plaintiff Lentz, and that a foreclosure of said plaintiff Lentz's attachment liens be made according to law as against all the right, title and interest of defendant F. T. La Prade in said property; and to take such proceedings, not inconsistent with this opinion, as may to the court seem just and proper.

McALISTER, C. J., and ROSS, J., concur.

LYMAN, J., being disqualified, Hon. A. C. LOCK-WOOD, Judge of the Superior Court of Cochise County, was designated to sit in his place.