## Peoples-Pittsburgh Trust Company v. Holy Family Polish National Catholic Church (Markiewicz, Appellant).

Argued March 27, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*John B. Gordon,* for appellee, was not heard.

OPINION BY MR. JUSTICE STERN, April 14, 1941:

In 1921 a number of members of the congregation, including appellant, loaned the Holy Family Polish National Catholic Church, Carnegie, Pennsylvania, various sums of money. In 1927 it was decided that these loans should be secured by a bond and mortgage on the church property subject to a prior mortgage of $14,000 which had been given some years before to a bank. Accordingly, on November 21, 1927, a bond and mortgage were executed to Peoples Savings & Trust Company of Pittsburgh (now Peoples-Pittsburgh Trust Company), the mortgage being in the sum of $50,000, and a trust agreement was entered into between the Church and those creditors who desired to participate, whereby the Trust Company was to issue mortgage certificates to the claimants in the amounts to which they

were respectively entitled, and to collect from the Church and pay over periodically to the certificate holders certain stipulated amounts on account of interest and principal. The acceptance of the certificates was to effect an automatic cancellation of all notes of the Church evidencing the claims. For a period of six months thereafter any creditor who had not already signed the trust agreement was to be allowed to become a party and thereby obtain his proportionate benefit of the mortgage security. It was further provided that, although the face amount of the mortgage was $50,000, the real sum due thereon was only the total of the indebtedness, with interest, which was owed the parties to the agreement.

Seventy-three members of the congregation, whose loans to the Church totaled $27,100, signed the agreement. Appellant was invited to join but refused. He had given up his membership in the Church and had brought suit for the amount of his claim, obtaining judgment on December 21, 1927, in the sum of $3,928.04. He revived this judgment by sci. fa. proceedings, which culminated in a judgment of $5,106.45 on December 22, 1932, and of $7,342.20 on April 15, 1940. On August 9, 1940, the Trust Company entered judgment in the sum of $35,155.02 on the Church's bond, this amount representing the indebtedness, with interest, due the signatories to the agreement. On a fi. fa. issued on this judgment the sheriff sold the property to the Trust Company for $8,200, accepting from it $215.62 in cash and taking its receipt for $7,984.38 on account of its judgment. The sheriff having made a return stating these facts in accordance with the Act of April 20, 1846, P. L. 411, appellant filed exceptions, claiming that the mortgage was without consideration, was intended to hinder and delay the collection of his claim, and was fraudulent and void within the meaning and intent of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045; he prayed that the entire purchase

money should be paid into court so that his claim might be paid therefrom, or, otherwise, that a re-sale be ordered. A rule to show cause was allowed. The Trust Company filed an answer, and appellant a reply. On these pleadings the court discharged the rule.

It was said in *Bailey v. Bailey*, 338 Pa. 221, 222, 12 A. 2d 577, 578: "Because of the alluring generality of the term 'fraud' there is a temptation to employ it indiscriminately, whereby it tends to degenerate into merely a trite epithet." Here, no intent to defraud anyone appears in the mortgage transaction. The security it afforded was offered to all creditors alike, and appellant, as he knew, could have shared in its benefits at any time within six months after its execution. A mortgage given to secure an existing indebtedness is based upon sufficient consideration and is valid as to other creditors of the mortgagor; this was true at common law *(Ross & Company's and Elsbree's Appeals*, 106 Pa. 82) and is equally true under the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, section 3. Unless there be some improper advantage to the debtor beyond the discharge of his obligation, or benefit to the creditor beyond the payment or security of his debt, or injury to other creditors beyond mere postponement to the debt preferred, there is nothing fraudulent in a debtor giving preference to some of his creditors by paying or securing his obligations to them: *Werner v. Zierfuss*, 162 Pa. 360, 29 A. 737; *Buckwalter Stove Co. v. Edmonds*, 283 Pa. 236, 240, 128 A. 835, 836.

Appellant makes a point of the fact that the amount of the mortgage, $50,000, was greater than the actual indebtedness secured. At the time the mortgage was executed it was impossible to know how many of the creditors would participate, and the trust agreement provided that, notwithstanding the nominal amount stated, the amount due on the mortgage should be only the sum, with interest, owed by the Church to those who signed the agreement. In the absence of a fraud-

ulent intent that the mortgage, by being made excessive in amount, should protect the property of the mortgagor from the reach of creditors (as in *Barrett v. Nealon,* 119 Pa. 171, 12 A. 861), it will not be invalidated to the extent of the sum actually due, and the true nature of the transaction may be explained: *Gordon v. Preston,* 1 Watts 385, 388.

Appellant's real grievance is that he has not succeeded in his attempt to obtain the present payment of his claim at the expense of the numerous other members of the Church who made similar loans.

Order affirmed.