[Civil No. 1425.　Filed March 13, 1915.]

[146 Pac. 922.]

H. S. CORBETT, Trustee, Appellant, v. SAMUEL L. KINGAN, Trustee, and FARRAND O. BENEDICT, Appellees.

1. TRIAL—EQUITABLE ACTION—SUBMISSION OF ISSUES TO JURY—"ALL CONTROVERTED QUESTIONS OF FACT."—The purpose of Civil Code of 1913, paragraph 542, authorizing the submission to a jury of "all controverted questions of fact" in a suit for equitable relief, and providing that each interrogatory shall be confined to a single question of fact, and so framed as to be answered by "Yes" or "No," and that the verdict shall be binding, unless set aside on motion, is to transfer from the court·to the jury the power of finding controverted questions of fact in equity cases, and is mandatory, and, on demand, the court must submit to the jury all controverted questions as to evidentiary or subordinate, as well as ultimate facts.

2. TRIAL—EQUITABLE ACTION—SUBMISSION TO JURY—STATUTORY PROVISIONS.—Where, in a suit for specific performance of a contract, the issue was whether a contract was made, an interrogatory which submitted to a jury the question whether a contract was entered into as alleged in the complaint called for a conclusion of law and was improper, and the questions should have called for facts as to whether mutual promises to do certain things were made, so that the court could determine whether a contract was made.

3. TRIAL—EQUITABLE ACTION—SUBMISSION TO JURY—STATUTORY PROVISIONS.—Where the complaint in a suit for the specific performance of a contract set forth two contracts made at different times, an interrogatory, submitting to a jury the question whether a contract was entered into as alleged, and an affirmative answer were insufficient for failure to show which contract the jury found by their answer.

4. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—PLEADINGS—PERFORMANCE.—Though under Civil Code of 1913, paragraph 431, a party suing for the specific performance of a contract need allege only generally that he has performed the conditions on his part, yet where the allegation is controverted, he must establish the facts of performance.

5. TRIAL — EQUITY — ISSUES — QUESTIONS OF LAW. — An interrogatory, submitting to a jury under Civil Code of 1913, paragraph 542, whether a party performed the conditions of a contract in accordance therewith, calls for a conclusion of law, where the question of performance is in issue and the interrogatory should call for the facts.

6. TRIAL—EQUITY—ISSUES—QUESTIONS OF LAW.—Under Civil Code of 1913, paragraph 542, providing for the submission to a jury of controverted questions of fact in equity cases, the verdict in equity cases on controverted questions of fact, together with admitted facts, must support a judgment settling the rights of the parties.

APPEAL from a judgment of the Superior Court of the County of Pima. W. F. Cooper, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

This is an action for specific performance. The appellant, who was plaintiff below, brings it as trustee of the contract beneficiaries against the appellee, who is the trustee of the estate by will. The facts set forth in the complaint briefly are these: In 1892 Julia A. Knapp, 58 years of age and unmarried, residing in New Jersey, entered into a verbal agreement with Farrand O. Benedict, her nephew, 20 years of age, and who had lived with her from early childhood, whereby she expressly agreed that if Benedict would go with her she would sell all of her property, and move to Arizona, take up government land and there reside, and that if Benedict would live with her during the remainder of her life and care for her as long as she lived, and would work and improve any lands she might take up or purchase as he would his own, she would, in consideration thereof, leave or will to him all property of which she might die possessed. Benedict accepted the proposition; it being understood that he should occupy the position of a son. Julia A. Knapp disposed of her property, realizing between $6,000 and $7,000, and in January, 1893, she and Benedict moved to Tucson, Arizona. He entered certain public lands, where he and his aunt lived for about three years. In 1895 she entered certain public lands, and in 1897 they both moved on to said lands, where they resided continuously until her death, September 26, 1912. Due performance by Benedict is alleged until June 14, 1900, when at his request the terms of the original agreement were modified, in this respect: Julia A. Knapp agreed to leave or will to Kate Benedict Thompson and to William B. Benedict, sister and brother of Farrand, each the sum of $1,500, and all the rest of her property to Farrand O. Benedict, he to continue living with her under the terms of the first agreement. It is alleged that

Julia A. Knapp, on June 14, 1900, in pursuance of and in the terms of the modified agreement, executed a will, and a deed of certain property to be delivered after her death to Benedict. The modified contract, it is alleged, was duly performed by Benedict, but that Julia A. Knapp did not perform her part. That on the contrary, on June 6, 1908, by her will, and on March 7, 1910, by a codicil thereto, she made other disposition of her property. That is, by her will of June 6, 1908, she devised all her property to appellee in trust with the power to reduce the same to his possession and sell, lease or dispose of same, with directions to pay net income to Farrand O. Benedict, semi-annually, during his natural life, with remainder, in case he should remarry, to the children of his body surviving him, otherwise the remainder was to go to Kate Benedict Thompson and William B. Benedict, share and share alike. The last will was probated and all the property in Arizona distributed to the trustee, who duly entered upon the discharge of his duties.

It is alleged that the last will was made without the knowledge or consent of Benedict, and that he had not relied upon it, but upon the modified agreement of June 14, 1900. It is alleged that Benedict had received from appellee the net income of property up to December 22, 1913, amounting to $1,092.92.

The appellant brings the action as trustee of Frances L. Benedict, wife of Farrand, William B. Benedict and Kate Benedict Thompson. The contract of assignment to appellant is executed by Farrand O. Benedict, and recites that it is made for the purpose of this suit, and it provides how the property upon recovery shall be divided among the beneficiaries; his interest going to Frances L. Benedict.

It is alleged that Kate Benedict Thompson and William B. Benedict had agreed with Farrand O. Benedict to take, in lieu of the $1,500 agreed to be given them, the New York piece of property.

The answer by appellee was quite as voluminous as the complaint. It denies that any such contract as the one alleged to have been made in 1892 was ever made, or that Julia A. Knapp sold her property or entered public land in Arizona in pursuance of said agreement, and denies performance by Benedict until June 14, 1900; denies the modification of June

14, 1900, as alleged, and denies that there was any such contract as the alleged contract, and denies the terms of said alleged modified agreement; denies that she agreed to give Benedict her property on condition that he would live with and care for her and work and improve her property, and denies that he agreed to do so; denies that she agreed to leave or will $1,500 each to Kate Benedict Thompson and William B. Benedict and the residue to Farrand O. Benedict; denies that she made a will in pursuance of the alleged agreement of June 14, 1900, or a deed of the New York property in pursuance thereof; alleges if any such agreement was ever made, Benedict violated its terms in that he failed to care for Julia A. Knapp until her death, but abused and maltreated her, and on more than one occasion physically ill-used her; denies that the will of June 6, 1908, is contrary to the terms of any alleged agreement or any modification thereof between Julia A. Knapp and Benedict; denies that the will of June 6, 1908, and the codicil thereto were made without the consent of Benedict, and denies that he relied upon the alleged modified agreement of June 14, 1900; denies that the assignment to appellant was made for a valuable consideration, and alleges that said assignment was made in an attempt to avoid the provisions of the statutes of Arizona; denies that appellant is the equitable owner of the property of the estate in trust; denies that Kate Benedict Thompson and William B. Benedict had agreed with Farrand O. Benedict to accept the New York property in lieu of the $1,500 claimed under the alleged modified agreement.

Appellee pleaded the statute of frauds, on the ground that said alleged agreements were not in writing; also pleaded an election by Benedict to take under the will of June 6, 1908.

Appellant replied to the answer by denying the mistreatment alleged therein, denying that the assignment to him was for the purpose of evading the provisions of the statutes of Arizona, and denied an election by Benedict to take under the will of June 6, 1908.

The case was tried to a jury. After the evidence was closed the court formulated and submitted to the jury two interrogatories, as follows:

"1. Did Julia A. Knapp during her lifetime, at the time and place alleged in the complaint, enter into a contract with

Farrand O. Benedict, as alleged in the plaintiff's complaint?''
''2. If your answer to interrogatory No. 1 shall be 'Yes,' you
will then answer whether or not Farrand O. Benedict fully
performed and carried out the terms and conditions of said
contract in accordance therewith?''

To both questions the jury answered, ''Yes.'' Whereupon
appellant moved for judgment upon the verdict of the jury,
and appellee moved to strike the jury's answers for the reason
that the interrogatories called for conclusions of law and not
questions of fact, and also for the reason that all controverted
questions of fact were not submitted to the jury and for
arrest of judgment for insufficient findings of fact by the jury
upon which to base the judgment; also moved that the cause
be submitted to another jury. The court ordered that the
cause be submitted to another jury.

It is from this order that this appeal is being prosecuted.
The order is not in terms an order for a new trial, but that
was its effect, and it is therefore an appealable order.

Mr. Ben. C. Hill, for Appellant.

Mr. John H. Campbell, for Appellees.

ROSS, C. J.—The foregoing statement discloses that this is
an action in equity, and that, as is usual in such actions, many
issues and questions of fact are necessarily involved. The
legislature, whether wisely or unwisely, it is not for us to say,
in the revision of our laws affecting verdicts of juries, inserted
a new statute applicable to ''actions where equitable relief is
sought'' which materially changes the procedure in the trial
of that kind of an action. It appears in the Civil Code as
paragraph 542, and reads as follows:

''In all actions where equitable relief is sought the court
shall, if a jury be demanded by either party, submit to the
jury all controverted questions of fact. Interrogatories shall
be framed and approved by the court presenting such ques-
tions, and each interrogatory shall be confined to a single ques-
tion of fact and shall be so framed as to be answered by 'Yes'
or 'No,' and shall be so answered where 'Yes' or 'No' is pos-
sible. In every such case the verdict shall be binding upon

the court in the determination of the action, unless set aside and a new trial granted on motion made for that purpose."

The evident purpose of the legislature was to transfer from the court to the jury the power and duty of finding all controverted questions of fact in equity cases as fully and completely as in actions at law. In other words, the conscience of the jury is substituted for that of the chancellor in determining the merits of a cause in so far as the controverted facts are concerned. The statute is mandatory that if a jury is demanded, the court shall submit "*all* controverted questions of fact" to it in the form of interrogatories, and that each interrogatory shall be confined to a single question of fact. As to whether the phrase "all controverted questions of fact" is broad enough to include both evidentiary or subordinate facts and the principal or ultimate facts in issue or not we do not feel called upon in this case to decide. It is enough to say that in our opinion the two interrogatories submitted to the jury fall far short of the requirements of the statute, even if it should be held that only the ultimate facts put in issue by the pleadings should be submitted to the jury.

The first question calls for a conclusion of law. It is, in effect, Did K. enter into a contract with B. at the time and place alleged in the complaint? That would depend upon the substantive facts of their agreement. It is alleged that K. promised to do certain things and that B. promised to do certain things. The question should be, Did they promise to do those certain things? An affirmative answer being had, it becomes a question of law as to whether the mutual promises constitute a contract or not. It is not for the jury to determine whether a contract was made or not, their duty being confined by the statute to finding the controverted facts of promises; one party insisting that such promises were made and the other denying that they were made. If made upon sufficient consideration, it follows as a conclusion of law that the contract was entered into. If not made, it follows as a conclusion of law that no contract was entered into.

Were it determined that the interrogatory was proper in form and calling for a conclusion of fact, still it would be bad as it is not sufficiently definite. The complaint sets forth two contracts, one of date 1892, made in New Jersey, and one of date June 14, 1900, made in Arizona. The question is, Which

one of these contracts does the interrogatory refer to, and which one did the jury have in mind when they answered the question? The suit is based upon the contract of June 14, 1900, but who can know that the interrogatory and answer thereto referred to that contract instead of the earlier contract?

The other interrogatory is subject to a like criticism. It calls for a conclusion of law. It is true that the statute (paragraph 431, Civil Code) relieves the party "pleading the performance of a condition precedent in a contract" from stating "the facts showing such performance," and permits him to state generally in his pleadings that he has duly performed all the conditions on his part, but if such allegation is controverted, he is required on the trial to establish the facts showing performance. One may, under this statute, plead a conclusion of law, but if it is controverted, he must introduce his evidence showing the *"facts"* of performance. Under the pleadings, Benedict was required to do several things on his part. What he did is a question of fact, and whether what he did was referable to his contract and done in pursuance thereof is a question of fact. The facts of the performance being settled by the jury, it was for the court to determine from these ascertained facts as a conclusion of law whether there was performance or not as promised and agreed.

It is clearly the intention of paragraph 542 that the verdict of the jury, in equity cases, on the controverted questions of fact, together with the admitted facts, shall be sufficient in fact and in law for the basis of a judgment of the court finally settling and adjudicating the rights of all parties before it. The verdict returned by the jury afforded no such basis. Therefore the court did not err in setting it aside and ordering a new trial.

There are some other questions presented in the briefs and which were urged for decision at this time in oral arguments, but as they were not involved in the order granting the new trial nor raised in the trial court so far as the record shows, we will not assume the burden of deciding them.

The order granting a new trial is affirmed, with direction that the cause be remanded for further proceedings according to law.

FRANKLIN and CUNNINGHAM, JJ., concur.