[Civil No. 1454. Filed March 13, 1916.]

[156 Pac. 79.]

A. N. SMITH and L. W. STILLWELL, Appellants, v. MARSHALL MOSBARGER, Appellee.

1. ACTION—JOINDER OF CAUSES—PARTIES—JOINT TORT.—Plaintiff properly joined in his action parties whom he alleged had combined and colluded together to defraud and cheat him out of his property, since they were charged with being joint wrongdoers in a common object.

2. EVIDENCE—PAROL EVIDENCE AFFECTING WRITING—FRAUD.—When parties competent to contract have reduced to writing the terms and conditions of their agreement, the law protects with great caution the written memorial of their contract thus made, and will permit its impeachment only for fraud or imposition.

3. CONTRACTS—FRAUD—DEGREE OF PROOF.—One challenging a written contract for fraud or mistake of fact must make his case by clear and convincing evidence, since written contracts are always presumed to be fair and honest in their inception and execution.

4. CONTRACTS—AVOIDANCE FOR FRAUD.—Where fraud or mistake is alleged as a ground for avoiding the stipulations of a written contract, it must be made to appear, not that the party has made a bad bargain, but that he has been wrongfully or fraudulently in-

duced to execute something contrary to what he thought to be his contract.

5. CONTRACTS — VALIDITY — MENTAL WEAKNESS. — Mere weakness of mind alone, without imposition or fraud practiced upon the party, forms no ground for vacating a contract; but if there is any unfairness in the transaction, such as gross inadequacy of consideration, the intellectual imbecility of the party may be taken into consideration to show such fraud as will afford ground for annulment.

6. CONTRACTS—VALIDITY—INABILITY TO READ.—Inability to read and understand the language in which a contract is negotiated, upon showing that its contents were misrepresented, justifies a court of equity in declaring it ineffective.

7. PLEADING—DEMURRER—ADMISSION.—A demurrer admits the allegations of the pleading to which it is opposed.

8. VENDOR AND PURCHASER—FRAUD BY BUYER.—Where the buyer of land, at request of the seller, who was feeble and unable to read English, read over the written contract between them, and, explaining it at the seller's request, materially misrepresented its terms and that he had $1,800 in the bank to secure payments to the seller, and thereafter the seller delivered the conveyance to a bank officer to hold in escrow until the buyer should perform the conditions of the contract, which bank officer immediately transferred to the buyer without waiting for performance, taking a mortgage back to himself for the price, there were sufficient acts of fraud to entitle the seller to avoid the contract.

9. TRIAL—BY COURT—SUBMISSION OF QUESTIONS.—In a suit to cancel a deed, where the allegations of the complaint that plaintiff was in feeble health, illiterate and unable to read and understand English, were denied by the answer, as were allegations that defendant represented that by the terms of the contract of sale plaintiff would receive such sums of money as he should require, and the whole purchase price within a year, and that defendant had on deposit in a bank $1,800 that he would pay as requested, appropriate questions embodying such issues should have been propounded and submitted to the jury by the court, since controverted questions of fact involved in an equity case must be submitted to the jury.

[As to when vendor may recover possession of the property from vendee, see note in 107 Am. St. Rep. 722.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. John C. Phillips, Judge. Reversed and remanded.

Mr. M. J. Dougherty, for Appellants.

Mr. G. W. Silverthorn and Mr. Will E. Ryan, for Appellee.

ROSS, C. J.—Plaintiff seeks to have canceled a deed of his property to defendant Smith upon the ground, as I gather from his complaint, that the same was by the escrow keeper delivered over to Smith without his authority, and before the conditions entitling its delivery had been performed, and also for the cancellation of a mortgage on the property executed by Smith and wife to defendant Stillwell, upon the ground that Stillwell had full knowledge of all the facts, and knew that the purchase price had not been paid, and that the deed was not to be delivered to Smith until the purchase price was paid.

The facts alleged in the complaint as a basis for the relief sought are, briefly:

On September 3, 1913, plaintiff and wife executed their deed of the property for a consideration of $3,500 to the defendant Smith, and delivered the same to the Salt River Valley Bank and defendant Stillwell, cashier thereof, in escrow, to be held by the bank until the sum of $3,400, with interest thereon at the rate of six per cent per annum be paid to the plaintiff, $100 on the principal and $68 in interest having that day been paid. Plaintiff seeks to avoid the effect of a written contract which he signed at the time of the execution of the deed by the following allegations in his complaint:

"That this plaintiff was on the third day of September, 1913, and is now, feeble and in ill health, and that this plaintiff has always been illiterate and uninformed in the English language, and in reading and writing the same, never having had opportunity for schooling or training along educational lines, and has never had but limited experience in dealings in real estate, and in the transferring, buying and selling of property, and has never been able to read the English language understandingly, and that being in said condition, this plaintiff entered into said contract with the defendant, A. N. Smith, and executed said deed; that at the time, and before the execution of said contract and deed, the defendant, A. N. Smith, represented to this plaintiff that, under said contract this plaintiff would receive payments on said purchase price of

$3,500 in such sums and at such times as this plaintiff was in need of money, and would make demand therefor, on said defendant, A. N. Smith, and that all of said purchase price would be paid in one year from the making of said contract; and this plaintiff signed said contract under the belief that said contract provided for such payments as demanded and for the payment of the whole within one year from the date thereof. That this plaintiff did not read said contract, and told the defendant Smith that he could not read the same, and requested said Smith to read the same to this plaintiff and explain the terms thereof to him; that said defendant, A. N. Smith, knowing of this plaintiff's infirmities, ignorance and illiteracy, and inability to read and understand the reading of said contract, represented to this plaintiff that, under the terms of said contract, this plaintiff would receive such sums of money as should be required by him on said purchase price, and for the payment of the whole purchase price within one year from the date thereof. That said defendant Smith knew that said contract did not provide for such payments, in the manner represented, and made such representations to this plaintiff with knowledge of their falsity, and with intent to induce this plaintiff to sign said contract and said deed, and to defraud this plaintiff. And as a further inducement for the signing of said contract said Smith then and there represented to this plaintiff that he, said A. N. Smith, had $1,800 in the Salt River Valley Bank, on deposit to his credit, and could and would pay this plaintiff any sums needed or requested by this plaintiff at any time that this plaintiff should request such payment, which representation was false when made, and said defendant knew the same to be false, and made the same for the purpose of inducing this plaintiff to execute said contract and deed and to defraud this plaintiff out of said property. That this plaintiff executed said contract and deed, believing in the truth of said representations, and in reliance thereon.''

He further alleges that the officers of the Salt River Valley Bank undertook to advise him and protect him in making the sale and securing the purchase price, and to that end instructed him to leave the deed with the bank until Smith had paid the full purchase price; that the deed was delivered to the bank with the promise from both the vice-president

and the defendant Cashier Stillwell that they would retain it until the happening of that event; and that, notwithstanding said promises, the defendant Stillwell delivered the deed to Smith by causing the same to be placed of record, and at the same time took from Smith and wife a mortgage on the property for $2,500.

It will be seen from the allegations of the complaint that the theory of the plaintiff was that Smith and Stillwell had combined and colluded together for the purpose of defrauding and cheating the plaintiff out of his property. Upon that theory they would be joint wrongdoers in a common object. Therefore, the demurrer of the defendants upon the ground of misjoinder of parties defendant and misjoinder of causes of action was properly overruled.

A more serious question arises upon the general demurrer to the effect that the complaint fails to state facts sufficient to constitute a cause of action. The complaint admits that the plaintiff signed a contract, by the terms of which the agreed purchase price should be paid, $100 in cash, and interest until January 1, 1914, and the balance of $3,400 in ten years thereafter, with interest payable annually on the first day of each year, with the right reserved to Smith to pay any or all of the principal sum or interest at any time.

The plaintiff seeks to impeach the written contract on the ground of fraud. We may state it as a general rule, when parties competent to contract have come together and reduced to writing the terms and conditions of their agreement, the law protects and guards with great caution the written memorial of their contract thus made. One court has put it:

"As the paper speaks for itself, cannot be misunderstood, and forgets not, the law looks with marked favor upon written documents as evidence, placing them in the highest category. All this would be undone if either party were still at liberty to refute the writing by his own mere word, however trustworthy he may be. No rule could more completely unsettle the law of evidence, built up so painstakingly and wisely by generations of jurists and legislators." *Western Mfg. Co.* v. *Cotton & Long*, 126 Ky. 749, 12 L. R. A. (N. S.) 427, 104 S. W. 758.

Notwithstanding the sanctity of written instruments, still there are cases in which the circumstances, in the interest of

justice, permit the impeachment of written contracts. For instance, where fraud or imposition has been practiced upon one of the parties, or where the contract was executed under a mistake of fact. Written contracts are always presumed to be fair and honest in their inception and execution, and the party challenging a written contract for fraud or mistake of fact must sustain his position by clear and convincing evidence. Likewise when fraud or mistake is alleged as a ground for avoiding the stipulations of a contract, it must be made to appear, not that the party has made a bad bargain, but that he has been wrongfully and fraudulently induced to execute something contrary to what he thought to be his contract. Courts cannot and will not rectify bad bargains or make contracts for parties, and, in order to avoid the appearance of doing so, strong and cogent reasons are demanded, not only in the pleading, but in the evidence in support thereof, when an attack is made on a written contract for either fraud or mistake of fact.

The plaintiff alleges that at the time he entered into the contract he was feeble and in ill health, illiterate and uninformed in the English language, and in the reading and writing thereof; that he was unable to read and understand the reading of the contract that he signed; and defendant Smith knowingly and fraudulently represented to him that by the terms of the contract he would receive such sums of money as he required and the whole purchase price within one year from date thereof.

Of course, it must be understood that "mere weakness of mind alone, without imposition or fraud, forms no ground for vacating a contract. But if there is any unfairness in the transaction, such as gross inadequacy of consideration, the intellectual imbecility of the party may be taken into consideration for the purpose of showing such fraud as will afford a ground for annulling." 6 R. C. L. 631.

So will inability to read and understand the language in which the contract is negotiated and written, upon a showing that its contents were misrepresented, justify a court of equity in declaring it ineffective. In such a case (*Maxfield* v. *Schwartz*, 45 Minn. 150, 10 L. R. A. 606, 47 N. W. 448), the court said:

"If the facts were as stated, the execution of the written instrument by the defendants was procured by the fraud of the other contracting parties, and for that reason the defendants may resist a recovery upon it. . . . While, in the ordinary business transactions of life, men are expected to exercise reasonable prudence, and not to rely upon others, with whom they deal, to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple minded or unwary. As between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him."

See, also, *Walker* v. *Ebert,* 29 Wis. 194, 9 Am. Rep. 548; *Dryer* v. *Security Fire Ins. Co.* (Iowa), 82 N. W. 494; *Williams* v. *Hamilton,* 104 Iowa, 423, 65 Am. St. Rep. 475, 73 N. W. 1029.

The text in 6 R. C. L. 634, cites cases in support thereof and is as follows:

"An illiterate party is not negligent in signing a contract without informing himself as to its contents or legal effect, where he relies upon the other party to express the terms of their oral agreement in a writing, and upon the latter's representation that he has done so. The same rule has been applied in cases in which the signer was not illiterate. It has been decided that one who, by falsely representing to another that a written contract contains the provisions agreed upon between them, induces him to sign it, is not entitled to enforce the contract, although the one who signed it did so without reading it or having it read to him. Circumstances often justify such action on the signer's part, even when there is no fiduciary relationship between the parties and they stand on an equal footing. There may be no such relation, and yet confidence reposed on the one side and abused on the other, as in the case of a verbal agreement which one party relies upon the other to reduce to writing. If the latter takes upon himself that duty, and, in the pretended performance thereof, writes an entirely different agreement and obtains the other's signature thereto, representing that it is the verbal agreement reduced to writing, either by say-

ing it is, or otherwise creating such belief, the failure to read it constitutes no estoppel.''

It is further alleged in the complaint that the defendant Smith at the time of the signing of the contract stated to plaintiff that he had on deposit to his credit with the Salt River Valley Bank $1,800, which he would pay to the plaintiff as needed or requested at any time; that said representation was false and made for the purpose of inducing plaintiff to sign the contract. On the assumption that the plaintiff was in a feeble condition and in ill health, not able to understand the English language, this side agreement of defendant Smith, although at war with the written contract, may have greatly influenced plaintiff to sign the written contract.

It must be admitted that the acts of fraud alleged in obtaining the signature of plaintiff to the contract, while evidence of bad faith upon the part of defendant Smith, also brand the plaintiff with negligence and carelessness, or a credulity and stupidity so gross as to be almost beyond the reach of the law. There are cases holding that one of the contracting parties, even though he may be ignorant or illiterate, has no right to rely upon the other contracting party to reduce to writing their agreement, or to read the same to him, or to explain its terms; that it is the duty of such a party to seek enlightenment and advice from outside and disinterested sources. There are other cases holding a contrary view. In such cases it is said:

''If the fact is established that one party fraudulently misread to the other the paper which was to evidence the contract between them, so as to create the impression that the document as read contained the same matter as was embraced by the understanding and agreement of the parties, his baseness is not offset in law by the mere negligence of the other party, who relied on what he had no reason to doubt. Whether the victim is actually misled is always an essential inquiry. But the fact that the means of knowledge were open to him, were indeed easily available, and that nothing but gross negligence would have failed to discover the falsehood, do not preclude an inquiry into the truth as to whether he in fact had the knowledge, and was in fact misled by the stratagem of his adversary. The signer's failure to read the

contract is not such negligence as to prevent his securing relief where the contract is read to him by the other party and a mistake is made in the reading." 6 R. C. L. 632.

I have found no case, however, holding that a contract may be avoided when it is correctly and accurately read by the party relied upon, especially when it is in a language spoken and well understood by the party charging the fraud. The allegations of the complaint in this case fail to state that the contract as signed by plaintiff was misread to him. Indeed, it seems that the pleader intended to allege that it was properly read, but, by an explanation of defendant Smith, incorrectly construed as binding him to pay plaintiff such money as he might need or request from time to time and the whole purchase price within one year. If that is what the pleader intended, it seems to me that no explanation could have been in plainer and more simple language, and, therefore, more readily understood by plaintiff, than the language used in the written contract. In other words, if the plaintiff was able to understand an explanation in the English language, why would he misunderstand a contract couched in the simplest words of the same language?

However, the plaintiff is not relying upon the allegations of fraud in connection with the procuring of the written agreement alone, and, granting that those allegations, in and of themselves, may not state sufficient acts of fraud to avoid the contract, I think they are sufficient when considered in connection with the further allegation that the defendant Stillwell, with full knowledge of all the facts, and contrary to his instructions as escrow keeper, delivered the deed of conveyance to Smith, thereby placing it in the power of defendant Smith to transfer or encumber the title and deprive the plaintiff of all security for the purchase price. If it be true, and for the purposes of the demurrer we must so consider it, that Stillwell, without authority, and contrary to his instructions as escrow keeper, caused the deed to be placed of record showing a clear title in Smith, and thereafter caused to be executed to himself a mortgage upon the same for an amount almost equal to its value, then this act would with photographic precision reflect a preconcerted plan or scheme on the part of defendants to cheat and defraud the plaintiff out of his property. The vice of the last act would reach back and

permeate the whole transaction, even though plaintiff fairly understood and consented to the terms of payment as set forth in the written contract. I think the complaint states a cause of action, and it was not error to overrule the general demurrer.

The pleadings raise several questions of fact, some ultimate and some evidentiary, and many of these are controverted. I will not undertake to enumerate all of these, but will content myself by suggesting a few of the more conspicuous that occur to me. The allegations in the complaint that plaintiff was feeble and in ill health, illiterate and unable to read and write and understand the English language, were all denied by the answer; as were also the allegations that defendant represented to the plaintiff that by the terms of the contract plaintiff would receive such sums of money as should be required by him and the whole purchase price within one year from the date thereof, and that defendant had on deposit in the bank $1,800 that he would pay to the plaintiff as needed or requested at any time. The truthfulness of these allegations should have been determined by the jury, and for that purpose appropriate questions should have been propounded and submitted by the court. If no deceptions or misrepresentations were made by the defendant Smith, as plaintiff alleges, or if the jury should find that the plaintiff did understand the contract he signed, knowing its terms and conditions, he ought not to recover.

The allegation in the complaint that the Salt River Valley Bank and defendant Stillwell delivered the deed to Smith, contrary to instructions, and without authority, is also denied by the answer. The truthfulness of that allegation was, therefore, an issue, and should have been submitted to the jury with proper interrogatories. As was said by this court in *Corbett* v. *Kingan*, 16 Ariz. 440, at page 446, 146 Pac. 922, at page 925, reading:

"It is clearly the intention of paragraph 542 that the verdict of the jury, in equity cases, on the controverted questions of fact, together with the admitted facts, shall be sufficient in fact and in law for the basis of a judgment of the court finally settling and adjudicating the rights of all parties before it. The verdict returned by the jury afforded no such basis."

Interrogatories Nos. 1, 2, 3 and 5, submitted by the court to the jury, all called for conclusions of fact, and not for answers to controverted questions of fact from which such conclusions might be deduced. Interrogatory No. 4 was a proper question, but its answer is so related to other controverted questions of fact as to be of no assistance to the court in forming its judgment, while standing alone.

For the reason that the controverted questions of fact involved in the case were not submitted to the jury as the law demands that they should be (*Corbett* v. *Kingan, supra*), I think the case should be reversed for a new trial, and that plaintiff be allowed to amend his complaint if the facts justify and require it, and he be so advised.

FRANKLIN, J., concurs.

CUNNINGHAM, J. (Concurring).—I concur in the decision reversing the case and remanding the cause for a new trial. My reasons therefor, briefly stated, are as follows:

The appellants assigned as error the trial court's refusal to submit, at their written request, to the jury twenty-two interrogatories prepared by them, for the alleged reasons the said interrogatories were necessary to decide the issues between the parties, and the court by such refusal denied the appellants the right to have the issues of fact submitted to the jury; in other words, denied the defendants due process of law.

A careful examination of the said requested interrogatories convinces me that they are such in substance as do not tend to a determination of the controverted questions of fact arising in the course of the trial, with the exception of the ninth and tenth. The ninth interrogatory is thus stated:

"Did Smith promise to pay Mosbarger on said contract whenever Mosbarger should demand pay?"

This assumes that a contract is established without dispute. It assumes the disputed issue as settled. The interrogatory was properly rejected for that reason.

The tenth interrogatory is thus stated:

"Did Smith promise to pay the entire purchase price of the property involved within one year?"

This goes to the gist of the issue. The answer to this interrogatory would tend to determine the case. The court submitted no interrogatory of the like import as this requested by defendants.

"In all actions where equitable relief is sought the court shall, if a jury be demanded by either party, submit to the jury all controverted questions of fact. Interrogatories shall be framed and approved by the court presenting such questions, and each interrogatory shall be confined to a single question of fact and shall be so framed as to be answered by yes or no, and shall be so answered where yes or no is possible. In every such case the verdict shall be binding upon the court in the determination of the action, unless set aside and a new trial granted on motion made for that purpose." Paragraph 542, Civil Code of Arizona 1913.

This statute calls for a special verdict in equity actions. This is an action where equitable relief is sought, and, a jury having been demanded, the court was required to instruct the jury to return a special verdict.

Paragraph 538 of the Civil Code of Arizona of 1913 defines the special verdict, its office and the court's duty upon receiving such verdict, as follows:

"The special verdict must find the facts as established by the evidence, and not the evidence by which they are established, and the findings must be such as that nothing remains for the court but to draw from such facts the conclusions of law."

These statutory requirements were not substantially observed by the court, and such failure constitutes reversible error. This necessarily includes my opinion that the complaint is sufficient in substance to authorize the granting of relief to plaintiff.

I state no opinion relative to the other matters in support of the judgment involved in the appeal.