[Civil No. 2096. Filed April 10, 1924.]

[224 Pac. 814.]

# FRANK G. TOWNSEND, Appellant, v. LOSON L. ODLE, FAMA E. TOWNSEND and OSCAR F. TOWNSEND, Appellees.

TRIAL—VERDICT RENDERED BEFORE TAKING EFFECT OF AMENDMENT TO CIV. CODE 1913, PARAGRAPH 542, HELD BINDING ON COURT.— Where certain questions of fact were submitted to jury in action for specific performance of oral contract to convey land, verdict thereon was binding on the court under Civ. Code 1913, paragraph 542; the amendment to such section (Laws 1921, c. 125) providing that it should be advisory only, being prospective and not having become operative under Constitution, article 4, part 1, section 1, subdivision 3, until after the verdict; it being immaterial that judgment was withheld until a time when the amendment became operative.

APPEAL from a judgment of the Superior Court of the County of Yuma. O. J. Baughn, Judge. Judgment ordered vacated and set aside and cause remanded with directions.

Mr. Thomas D. Molloy (now deceased), for Appellant.

Messrs. Robertson & Lindeman and Messrs. Kingan, Campbell & Conner, for Appellees.

ROSS, J.—This is an action to enforce the specific performance of a verbal contract to convey certain real property, and to cancel certain deeds alleged to be clouds upon plaintiff's title, or in lieu thereof to establish certain claimed equities of plaintiff in and to and against said premises.

The plaintiff's complaint is in effect as follows: In April, 1914, his father, Oscar F. Townsend, one of

See 25 R. C. L. 791.
See 36 Cyc. 1218.

the defendants, verbally offered to give plaintiff lot 12, block 93, and lot 2 of block 174, Yuma, if plaintiff would erect thereon a dwelling-house, establish therein his residence, and make it his home for one year; that plaintiff accepted the offer, and constructed a $2,500 dwelling and otherwise complied with his father's offer; that about September 2, 1919, in fulfillment of his promise, defendant O. F. Townsend made, executed, and delivered to plaintiff a deed of said property, in which Fama E. Townsend, his wife, and plaintiff's stepmother, joined. The plaintiff was desirous of constructing on said premises an apartment house, and for that reason did not cause said deed to be recorded, but returned it to his father, O. F. Townsend, on condition that the latter would use said lots, together with some of his own property, as security, and borrow $6,000 for plaintiff with which to construct such apartment. That defendant O. F. Townsend thereafter on October 6, 1919, deeded said premises to his wife, Fama, who was then the owner in her own right of block 9 of the Townsend tract, in Yuma county; that defendants O. F. and Fama Townsend thereafter executed their note and a mortgage or trust deed of lot 12 of block 93 and lot 2 of block 174, Yuma, and block 9 of the Townsend tract, to the state Mutual Building & Loan Association of California, for the sum of $6,000, under the terms of which said sum was to be repaid in monthly installments of $90; that said $6,000 was used in the construction of said apartment; that plaintiff's deed of September 2, 1919, was to be held by defendant O. F. Townsend as security that the mortgage or trust deed to the building association would be released from block 9 of the Townsend tract, it being agreed and understood that as soon as said apartment was completed the building association would cancel said trust deed and mortgage as against block 9 of the Townsend tract, and hold said lots of plaintiff as the

sole security; that about the time the $6,000 became available the defendants, O. F. and Fama Townsend, induced plaintiff to change the building to be erected on said premises from a six apartment to an eight apartment, agreeing, if he needed, in addition to said $6,000 and what he could raise on his own account, any further sums to complete the building, they would assist him by giving him such sums; that he began the construction of such apartment about November 1, 1919, and finished it about July 1, 1920; that he personally superintended the construction and worked thereon as mechanic and laborer and as an electrician; and that such service, work, and labor were of the reasonable value of $5,000; that he furnished of his own funds $6,000 in cash, as well as material of the value of $1,000, and that defendant O. F. Townsend supplied him with about $1,500 as a gift towards the erection of such apartment house; that the defendants Townsend on July 9, 1920, for the purpose and intention of defrauding plaintiff out of said premises and his investments therein, conveyed the same to the defendant Odle, who knew of said purpose and intention, and that on November 3, 1920, and after the institution of this suit, defendant Odle reconveyed said premises to defendant Fama Townsend. The plaintiff avows a willingness to do equity and pay defendants the $1,500, or any other sum they may have advanced, if the court determines that he should do so, and consents that any such sums may become a lien upon the premises and be repaid in suitable installments, after the furniture placed in the apartment house is paid for.

Plaintiff's prayer is in the alternative, that is, that all the deeds from defendant O. F. Townsend to Fama, and from Fama to Odle, and Odle to Fama, of said lots be canceled, and defendant O. F. Townsend be required to deliver to him his deed of September 2, 1919; and, if these things cannot be done,

then that plaintiff have judgment against defendants Townsend in the sum of $12,000 for work, labor, money, and materials furnished and supplied in the construction of building, and the further sum of $2,500, the present value of the dwelling-house he put on the premises, and that he have a lien on premises for the payment of these sums, and for general relief.

The defendants deny, generally and specifically, most of the allegations of the complaint. They allege that plaintiff induced them to borrow the $6,000 for the purpose of building an apartment on said lots, and that they did so, turning the money over to plaintiff to be used in such construction; that it was the understanding that they would deed the lots to plaintiff if he would repay said sum of money and satisfy the deed of trust that they had executed to the building association, and repay any other sums of money that they might advance in the construction of said apartment; that they did advance and expend the further sum of $13,027 in the construction of said building; that defendant Fama Townsend paid plaintiff for his services and labor in the construction of said building; that plaintiff endeavored to borrow money to repay defendants the sum that they had advanced, but was unable to do so, and advised defendants of that fact; that he gave his consent to their selling and disposing of said premises for the purpose of securing reimbursement of the moneys expended by them; and they pray that the plaintiff take nothing; and that their title to said premises be quieted as against the plaintiff and all persons claiming under him.

The case was tried before the court and a jury, the trial beginning on the 3d and ending on the 9th of June, 1921. There was submitted to the jury some twenty-four special interrogatories upon controverted questions of fact, and the jury's findings were on

the whole in favor of the plaintiff and his contentions. They found that the father agreed to deed the described premises to the son on the conditions alleged, and that he did in fact make, execute, and deliver such deed (in which his wife joined) to the plaintiff, and that the same was not recorded but was returned to him by the plaintiff with the understanding that he would redeliver it to the plaintiff when the apartment house was completed, if the plaintiff would repay the amount of money which Oscar F. and Fama E. Townsend had advanced towards the construction of said apartment house, and secure the release of block 9 of the Townsend tract from the mortgage to the building association.

The jury found that the defendants Townsend had advanced and contributed in the construction of said apartment house the sum of $5,500, in addition to the sum of $6,000 borrowed from the building association. They also found that defendant Oscar F. Townsend was indebted to plaintiff in the sum of $2,500 commissions for sales of land effected by the plaintiff for the defendant. They found that plaintiff had contributed in money $2,500, and work and labor of the reasonable value of $5,000 towards the construction of said apartment.

These findings by the jury were made on June 9, 1921. From that time until November 29, 1921, the court held the matter under advisement. On the latter date the court made findings of fact and conclusions of law, treating the special verdict of the jury as advisory only. The findings of the court, however, do not digress very materially from those made by the jury or contended for by plaintiff, except in the matter of the amount of money advanced by the defendants towards the construction of said building. Instead of adopting the sum found by the jury as so advanced, to wit, $5,500, as the correct amount, the court made its own findings, and determined the

amount the defendants had advanced was $12,399.50, in addition to the $6,000 borrowed from the building association.

The judgment and decree quieted the plaintiff's title to said lot 12, block 93, and lot 2, block 174, city of Yuma, upon the condition that plaintiff pay to defendants Townsend the sum of $12,399.50, with interest at 6 per cent from the first day of July, 1921, and secure the release of the mortgage or deed of trust upon block 9 of the Townsend tract, to the State Mutual Building & Loan Association of California, within thirty days from the date of the judgment. It provided that said premises should be sold at public auction after advertising the same, 'the manner of applying the receipts thereof, and appointed a receiver to perform these duties. It also provided that the rents from the premises be used to pay the taxes on the property, to take care of the interest upon the deed of trust to the building association, and to pay E. F. Sanguinetti the amount due him for furniture placed in said apartment house.

The evidence taken at the trial is not before the court, and our review is limited to questions that may be considered independent of the evidence.

The appellant, heretofore referred to as plaintiff, contends that the special findings of the jury were binding upon the court, and that grievous error was committed by the court in substituting its own findings as to the amounts appellees, heretofore referred to as defendants, had advanced towards the construction of the apartment house for the amount found by the jury, and, since we think this question is determinative of the disposition of the case, we will not notice to any extent other assignments.

As this question is one of law, it may very properly be considered without the presence of the evidence.

At the time of the trial and on the day the jury returned its verdict the law made it obligatory upon

the court, if a jury in an equitable case were demanded to submit to it all controverted questions of fact, and it was provided that—

"In every such case the verdict shall be binding upon the court in the determination of the action, unless set aside and a new trial granted on motion made for that purpose." Paragraph 542, Civil Code 1913.

The Fifth Legislature, by chapter 125, Session Laws 1921, amended paragraph 542 by providing that the verdict of the jury in equity cases should be advisory only. The session of the legislature that enacted chapter 125 adjourned *sine die* on the 11th of March, 1921. The Constitution of the state provides that (except as to certain emergency laws) all acts shall be inoperative for ninety days after the close of the session of the legislature enacting such measure. Subdivision 3, section 1, part 1, article 4. As heretofore stated, the jury returned its verdict in this case on June 9, 1921. Computing the time from the adjournment of the legislature that passed the amendatory chapter (125) to and including the day on which the verdict of the jury was returned, it is found to be within the ninety days in which laws are "inoperative" under the Constitution.

It is suggested by counsel for appellee that it was thought at the time of the trial that the amendatory act had taken effect. In this, however, all parties were mistaken. The learned counselor who represented the plaintiff in the lower court has since passed to his reward, and we have no statement from him as to his understanding at the time of the trial. If there were anything in the record amounting to a waiver, the court's treatment of the jury's findings might be upheld. There is nothing, however, to indicate that the plaintiff at any time consented to the court's ignoring the special findings of the jury. We have heretofore recognized the binding force and ef-

26 Ariz.—16

fect of the provisions of paragraph 542 and the necessity of the trial court, not only to submit controverted questions of fact to the jury, but to conform his judgment to the facts as found. *Brown* v. *Greer,* 16 Ariz. 215, 141 Pac. 841; *Corbett* v. *Kingan,* 16 Ariz. 440, 146 Pac. 922; *Costello* v. *Cunningham,* 19 Ariz. 512, 172 Pac. 665.

The suggestion that, because at the time the court made its findings and entered judgment thereon (November, 1921) the law had been amended so as to make the verdict of the jury in equity cases advisory only, the court had a right to disregard the verdict of the jury, even though it was found and returned at a time when the law required the court to accept the verdict as binding, is not correct. This contention is based upon the idea that rules of procedure are subject to legislative change, and that litigants have no vested right to have their causes of action tried in accordance with the rules of procedure existent at the time the action arose, or suit was instituted thereon or tried. While it may be conceded that this is the general rule, it has no application in this case, for the reason that the amendment of paragraph 542 was prospective and intended to apply only to cases arising in the future and not to cases tried before it became effective. The fact that the court delayed until the amendment became effective before disregarding the verdict of the jury did not change the rule. If the court was dissatisfied with the special verdicts of the jury, the only legal way to avoid the effect thereof was to grant a new trial as provided in the statute.

It is obvious the court erred in disregarding the jury's verdict and in fixing a lien upon plaintiff's premises for $12,399.50 instead of $5,500, the amount found by the jury, Because we are not in possession of the necessary facts, the evidence not being before us, it is not possible for us to enter the proper

judgment or decree, or to direct, except in a general way, the kind of judgment or decree the lower court should enter. Under the pleadings and findings it is clear the title should properly have been quieted in plaintiff, subject to lien in favor of the building association for $6,000 and the lien in favor of defendants for $5,500, the amount they put into the apartment house. It would also seem that, since plaintiff has large interests in said premises, the decree should be so framed as to protect such interests, if possible. He should be given ample time, measured by his ability and willingness, using the property involved as one of his resources without unnecessary hindrances, to raise the money with which to liquidate said liens.

This is an action in equity, and the decree should be so drawn as to protect the rights and interests of all parties. Whatever the state of feeling between the parties may have been during the trial, or at its end, it is apparent that this controversy grew out of a most natural transaction between father and son, one prompted by parental affection and solicitude to have the son settled and reasonably provided for. The decree should be so framed as to carry out this purpose, if possible.

The property was placed in the hands of a receiver at the time of the entry of judgment, November 30, 1921, and the rents, issues, and profits were directed to be applied to the payment of indebtedness incurred for furniture for the apartment, and doubtless the receiver has also paid the installments of principal and interest as they became due to the building association. These facts and all other facts bearing upon the equities of the parties should be considered by the court in framing the decree.

The arrangement between the plaintiff and defendant with reference to the construction of the apartment contained no stipulation as to when the defendant

O. F. Townsend should be repaid any moneys that he might advance to help his son, the plaintiff. We can see no reason for any great haste, therefore, in discharging this indebtedness, the essential thing being that it be paid, together with interest, within a time that might be considered reasonable under all the circumstances. As to whether the decree should provide that the property be continued in the hands of a receiver, or given over to the plaintiff, the court will determine according to the necessities of the case.

The plaintiff makes several other complaints, but, inasmuch as the one we have noticed requires a reversal of the case, we will not enter into a consideration of other assignments.

The judgment of the lower court is ordered vacated and set aside, and the cause remanded, with directions that the lower court enter judgment in favor of the plaintiff, in accordance with the directions of this opinion.

McALISTER, C. J., and LYMAN, J., concur.